UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

In re:

ALLENTOWN AMBASSADORS, INC.,          :          Case No. 04-22368T
    *Debtor(s)*
                                                               :

--------------------------------------------------------

ALLENTOWN AMBASSADORS, INC.,          :
    *Plaintiff(s)*
                                                                :

               *v.*          :          Adv. No. 04-2390

NORTH AMERICAN BASEBALL, LLC,          :
*d/b/a* THE NORTHEAST LEAGUE,          :
*f/k/a* NORTHERN LEAGUE,
*f/k/a* NORTHEAST LEAGUE, <u>et</u> <u>al.</u>,          :
    *Defendant(s)*
                                                             :

## <u>AMENDED ORDER</u>

AND NOW, this  23rd  day of September, 2005, upon consideration of the motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss")[1] filed by Defendants, North American

Baseball, Miles Wolff, Daniel Moushon, Chip Hutchins, Van Schley, Jonathon Fleisig, Greg

Lockard, Nicholas Lopardo, The Aces, Lumberjacks Baseball, LLC, Brockton Professional Baseball,

LLC, Flying Bats & Balls, LLC, Floyd Hall Enterprises, LLC, Spirit of New England Baseball Club,

LLC, and Club du Baseball de Quebec, Inc. ("collectively referred to as the "Defendants"),[2] to the

second amended complaint ("Second Amended Complaint") of Plaintiff, Allentown Ambassadors,

---

1. Fed. R. Civ. P. 12(b)(6) is made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7012(b).

2.    Plaintiff named another Defendant, namely Clyde Smoll ("Smoll"), in its original complaint ("Complaint") and amended complaint ("Amended Complaint"). After Plaintiff filed its Second Amended Complaint, it moved to dismiss Smoll as a Defendant in the action. The motion was granted.

Inc. ("Plaintiff");

## I. Standard of Review

AND a court, in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), is required to accept as true all well pleaded allegations of the complaint and all reasonable inferences therefrom and to view them in the light most favorable to the non-moving party, Angelastro v. Prudential Bache Security, Inc., 764 F.2d 939, 944 (3rd Cir. 1985);

AND a dismissal under Rule 12(b)(6) is "warranted only if the non-moving party can prove no set of facts in support of his claim that would entitle him to relief." John L. Motley Associates, Inc. v. Rumbaugh, 104 B.R. 683, 685 (Bankr. E.D. Pa. 1989);

AND the liberal requirements of notice pleading under Fed.R.Civ.P. 8(a)[3] mandate only that a "complaint put the defendant on notice of the claims against them." Ginley v. E.B. Mahoney Builders, Inc., 2005 WL 27534 at *1 (E.D. Pa. Jan. 5, 2005) (*citing* Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 790 (3rd Cir. 1984); see also Millar v. Windsor Township, 2005 WL 1513120, at *2 (M.D. Pa. June 24, 2005) ("[f]ederal notice pleading rules do not require plaintiffs to allege affirmatively every aspect of their claims, but only to present sufficient facts to allow the opposing party to conduct discovery and prepare a defense.");

## II. Dismissal of Claims With Prejudice

AND Defendants having previously moved to dismiss Plaintiff's Complaint and its Amended Complaint;

AND Plaintiff's Amended Complaint having contained the following seven counts: (1) injunctive relief; (2) an accounting; (3) damages regarding the sale of franchises, et al.; (4) Sherman

---

3.  Fed. R. Civ. P. 8 is made applicable to this proceeding by Fed. R. Bankr. P. 7008(a).

2

Act violations; (5) RICO violations; (6) collusion and conversion; and (7) damages under 11 U.S.C. § 362(h);

AND the Court having entered an Order on March 29, 2005 denying Defendants' motion to dismiss Plaintiff's Amended Complaint and granting Plaintiff's request for an opportunity to further amend its complaint "on the specific condition" that Plaintiff file a second amended complaint pleading its seven claims and any others "with specificity";

AND Plaintiff's Second Amended Complaint alleges only three counts for: (i) violation of the automatic stay; (ii) breach of fiduciary duty; and (iii) breach of contract;

AND Defendants contending that the claims that were pled in the Amended Complaint but not re-pled in the Second Amended Complaint, namely the claims for injunctive relief, an accounting, the Sherman Act violations, the RICO violations and collusion and conversion, should be dismissed with prejudice;

AND this Court having "authority to condition the withdrawal of a claim via a Rule 15 motion to amend on 'the same standard of review as a withdrawal under Rule 41(a),' Wakefield v. Northern Telecom, Inc., 769 F.2d 109, 114 n.4 (2nd Cir. 1985), that is 'upon such terms and conditions as the court deems proper.' Fed.R.Civ.P. 41(a)(2)."[4] Astor Holdings, Inc. v. Roski, 2002 WL 1058057 at * (S.D. N.Y. May 23, 2002); see also  see Skinner v. First American Bank of Virginia, 64 F.3d 369, 1995 WL 507264 at *2 (4th Cir. August 28, 1995) (table) (concluding that, since Fed. R. Civ. P. 41 provides for the dismissal of actions rather than claims, Fed. R. Civ. P. 15 is technically the proper vehicle to accomplish a partial dismissal by amendment of a complaint);

AND Defendants having filed two motions to dismiss before Plaintiff voluntarily deleted its

---

4.   Fed. R. Civ. P. 15 is made applicable to this proceeding by Fed. R. Bankr. P. 7015.

claims for injunctive relief, Sherman Act violations, RICO violations and collusion and conversion from its complaint;

AND Defendants having now filed a  motion to dismiss the Second Amended Complaint;

AND this court concluding that Defendants, who have expended significant time and expense seeking to obtain a dismissal of the claims against them, would be prejudiced if Plaintiff was allowed to voluntarily delete claims against them and retain the opportunity to re-file the same claims against them in the future;

AND Plaintiff having not provided any reason in its response to Defendants' Motion to Dismiss the Second Amended Complaint for deleting the aforementioned claims from its Second Amended Complaint;[5]

AND Plaintiff having not provided any reason why it should be permitted to pursue these claims against Defendants at another time;

AND, therefore, this Court grants Defendants' request to have Plaintiff's claims for injunctive relief, an accounting, Sherman Act violations, RICO violations and collusion and

---

5. In its Memorandum filed in response to Defendants' motion to dismiss the Amended Complaint, Plaintiff stated its reason for not pursuing its claim for Sherman Act violations in Count III of the Amended Complaint. See Plaintiff's Memorandum in Response to Defendants' Motions to Dismiss [the Amended Complaint] Under Rule 12(b)(6) at 7.  Plaintiff asserted that while it "had sufficient grounds to raise" its anti-trust claim against Defendants under the Sherman Act, 15 U.S.C. §1, it "believe[d] that the actions of Defendants more properly len[t] themselves to the other causes of actions listed [in the amended complaint]." Following this discussion, Plaintiff advised the Court that it was voluntarily dismissing its anti-trust claim in Count III of the Amended Complaint, without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. Id. at 7.

Notably, Plaintiff had no authority pursuant to Rule 41(a) to voluntarily dismiss its claim.  As this court observed in its discussion, infra, Rule 41(a) allows a plaintiff to voluntary dismiss *an action* but *not a claim.*  See Fed.R.Civ.P. 41(a). The dismissal of a claim falls within the scope of Rule 15(a) which permits the amendment of a complaint which has already been once amended "only by leave of court or by written consent of the adverse party." Fed.R.Civ.P. 15(a). Consequently, Plaintiff's statement that it was voluntarily dismissing its claim without prejudice was of no effect.

conversion dismissed with prejudice, see Wakefield., 769 F.2d at 114 ("[T]he trial court has

considerable discretion in deciding whether to allow a withdrawal of a claim without prejudice.");

### III.  Standing to Seek Damages for Violation of the Stay

AND Defendants arguing that Plaintiff lacks standing to assert a claim for monetary

damages under 11 U.S.C. §362(h) because it is a corporation rather than an individual;

AND section 362(h) provides:

> An *individual* injured by any willful violation of a stay provided by
> this section shall recover actual damages, including costs and
> attorneys' fees and, in appropriate circumstances, may recover
> punitive damages.

11 U.S.C. §362(h) (italics added);

AND the Third Circuit Court of Appeals in Cuffee v. Atlantic Business and Community

Development Corporation (In re Atlantic Business Community Corporation), 901 F.2d 325, 329 (3rd

Cir. 1990), in the course of ruling in favor of the trial court's conclusion that Cuffee had willfully

violated the automatic stay so as to warrant the imposition of punitive damages, attorney's fees and

costs under §362(h) against the corporate debtor, having stated that "[a]lthough Section 362(h) refers

to an individual, the section has uniformly been held to be applicable to a corporate debtor." See

Budget Service Co. v. Better Homes of Va., 804 F.2d 289, 292 (4th Cir. 1986).

AND Defendants contending that the aforementioned statement in the Third Circuit's

opinion in Cuffee regarding the application of §362(h) to corporate debtors was dicta because the

appellant/defendant had not raised the issue on appeal;

AND Defendants further contending that this court should rule that §362(h) applies solely

to individuals and not corporate debtors;

AND this court observing that the specific issue that was raised on appeal in Cuffee with

5

regard to §362(h) was not whether it applied to corporate debtors but whether Cuffee's actions were willful within the meaning of §362(h), <u>see</u> <u>Cuffee</u>, 901 F.2d at 328-29;

AND the Third Circuit's comment in <u>Cuffee</u> on the issue of whether §362(h) applies only to individuals and not to corporations consisting solely of its statement that the subsection had been "uniformly" held to apply to corporations, <u>see</u> <u>Id</u>. at 329;

AND the Second, Eighth and Ninth Circuits having held, subsequent to the Third Circuit's decision in <u>Cuffee</u>, that §362(a) applies only to individuals and not corporations, <u>see</u> <u>Sonse v. Reinert & Duree, P.C. (In re Just Brakes Corporate Systems)</u>, 108 F.3d 881, 884-85 (8th Cir. 1997); <u>Jove Engineering, Inc. v. Internal Revenue Service</u>, 92 F.3d 1539, 1550 (11th Cir. 1996) (holding that "[t]he term 'individual' in §362(h) does not include a corporation."); <u>Johnston Environmental Corporation v. Knight (In re Goodman)</u>, 991 F.2d 613, 618-620 (9th Cir. 1993); <u>Maritime Asbestosis Legal Clinic v. LTV Steel Company, Inc. (In re Chateaugay Corporation)</u>, 920 F.2d 183 (2nd Cir. 1990);

AND it no longer being "uniformly" held, in light of the decisions of the Second, Eighth, Ninth and Eleventh Circuits, that §362(h) applies to corporate debtors;

BUT this court being bound to follow the Third Circuit's interpretation in <u>Cuffee</u> regarding §362(h)'s applicability to corporate debtors unless it is dictum;

AND dicta being "'[w]ords of an opinion entirely unnecessary for the decision of the case." <u>Shell Petroleum, Inc. and Subsidiary Corporations v. United States</u>, 50 Fed. Cl. 524, 534 (Fed. Cl. 2001);

AND this court noting that even though the specific issue that was raised in <u>Cuffee</u> regarding §362(h) was whether Cuffee's actions were willful within the meaning of §362(h), the Third Circuit's determination that §362(h) is applicable to corporate debtors was arguably necessary to

6

its ruling that "Cuffee's actions in regard to damages under Section 362(h) were properly assessed for willful violation of the automatic stay." <u>Cuffee</u>,  901 F.2d at 326;

AND the Third Circuit in <u>Lansdale Family Restaurants, Inc. v. Weis Food Service</u> (<u>In re Lansdale Family Restaurants, Inc.</u>), 977 F.2d 826 (3rd Cir. 1992), which was *subsequent* to the Second Circuit's decision in <u>Maritime Asbestosis Legal Clinic</u> , 920 F.2d at 185 [6](ruling that §362(h) does not apply to corporate debtors), having ruled that:

> (1) the appellee/defendant willfully violated the automatic stay;
>
> (2) section 362(h) "provides for, *inter alia*, recovery of actual damages for any willful violation of the stay"; and
>
> (3) the appellant/corporate debtor was entitled to judgment in its favor and to a consideration of its request for counsel fees under §362(h);

AND the Third Circuit's decision in <u>Lansdale Family Restaurants, Inc.</u>, <u>supra</u>, lending support to the conclusion that the Third Circuit's statement in <u>Cuffee</u> that §362(h) applies to corporate debtors is binding as a ruling and was not dicta;

AND numerous courts and other legal authorities having interpreted the Third Circuit's conclusion in <u>Cuffee</u> that §362(h) is applicable to debtor corporations as a ruling on the issue and not dicta, <u>see</u> <u>Sonse</u>, 108 F.3d at 884-85 (ruling that the "plain meaning" of the word "individual" as used in the Bankruptcy Code supports the conclusion that §362(h) only applies to individual debtors and not to corporate entities and rejecting the "earlier, contrary circuit decisions [of the Second and Third Circuits] that did not give adequate weight to the ...plain meaning of [§362(h)]); <u>Jove Engineering</u>, 92 F.3d at 1549 (observing that "[t]he circuit courts are equally divided whether

---

6.    In <u>Maritime Asbestosis Legal Clinic</u>, 920 F.2d at 185, the Second Circuit held, based on the "plain meaning" of the term "individual" in §362(h) and the "basic rules of statutory construction, that §362(h) is applicable only to natural persons and not corporate debtors".

the term 'individual' in §362(h) includes a corporation" because "[t]he Third and Fourth Circuits hold the term 'individual' includes corporations, but the Second and Ninth Circuits hold the term 'individual' does not include corporations."); Johnston Environmental Corp., 991 F.2d at 619 (noting that in Cuffee the Third Circuit "concluded" that the term "individual" in §362(h) "encompasses corporate entities as well as natural persons."); Maritime Asbestosis Legal Clinic, 920 F.2d at 185 (observing that the Second and Third Circuits issued "decisions" in favor of applying §326(h) to benefit corporate debtors); Pardo v. Pacificare of Texas, Inc. (In re APF Co.), 264 B.R. 344, 359 (Bankr. D. Del. 2001) (noting that "[t]he Supreme Court has not yet resolved the split of authority" on whether §362(h) applies to corporate debtors and that "Atlantic Business is still binding law in this Circuit."); In re Lehigh Valley Professional Sports Clubs, Inc., 2001 WL 1188409, at *4 n.15 (Bankr. E.D. Pa. Sept. 7, 2001) ("The Third Circuit Court of Appeals has construed individual [in the context of §362(h)] to include corporations."); Express America, Inc. v. Pierce (In re Express America, Inc.), 132 B.R. 535, 540 (Bankr. W.D. Pa. 1991) (citing Cuffee as support for the statement that "[a]lthough §362(h) speaks only of individuals as being entitled to damages for a willful violation of the automatic stay, a corporate debtor also may recover."); D. Casey Kobi, Book Note, *Staying True to Purpose: Including Corporate Debtors Under §362(h) of the Federal Bankruptcy Code*, 76 Ind. L.J. 243 (Winter, 2001) (observing that "[w]hile the Second, Eighth, Ninth, and Eleventh Circuits each interpret the term "individual" to include only natural persons[,] ... the Third and Fourth Circuits each hold that §362(h) must be interpreted to include corporations."); Tisha Morris Federico, *The Case for Broadening the Stay to Protect "Entities" under §362(h)*, 16-Oct Am. Bankr. Inst. J. 28 (October 1997) (stating that "[t]he Third and Fourth Circuits have held that §362(h) should be applied to corporate debtors, while the Second, Eighth, Ninth and Eleventh Circuits each have ruled that "individual" for purposes of §362(h) includes only

8

natural persons.");

AND this Court further observing that there are legal theories besides §362(h) for imposing

damages in favor of a corporate debtor if it succeeds in proving a violation of the automatic stay;

[7] see Sonse, 108 F.3d at 885 (observing that "§361(a), buttressed by §105(a), confers broad equitable

power to remedy adverse effects of automatic stay violations."); Johnston Environmental Corp., 991

F.2d at 620 (adopting view that a corporation injured by a violation of the automatic stay can recover

damages under the theory of civil contempt);

AND this Court, therefore, concludes that it is unnecessary to decide at this juncture in this

proceeding whether the Third Circuit's statement in Cuffee that §362(h) applies to corporate debtors

was dicta and, if so, whether to hold that §362(h) applies only to individuals;

## IV.  Alleged Violations of the Stay

AND Plaintiff, in support of its claim for violation of the automatic stay alleging that

Defendants "effectively eliminated the value of the Allentown Ambassadors['] franchise by: (a)

using the Allentown franchise to field the Aces for the 2004 season; (b) voting to dissolve the

League; and (c) reconstituting the League under a new name, the Canadian American League with

all of the prior Northeast League teams except for the Allentown Ambassadors," Complaint ¶55;

### A. "Using the Allentown franchise to field the Aces for the 2004 season"

AND Plaintiff, in support of its contention that Defendants "effectively eliminated the value

of the Allentown Ambassadors['] franchise" by "using the Allentown franchise to field the Aces

for the 2004 season," alleging that on February 1, 2004, Defendants discussed and made plans to

---

7.   While Plaintiff has requested punitive damages for Defendants' alleged violation of the automatic stay,
it may not be entitled to such damages.  See e.g., Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1196-
1198 (9th Cir. 2003) (ruling that punitive damages are not available under the bankruptcy court's inherent
sanction authority or its civil contempt authority).

create a new franchise named the Aces "for the specific purpose of usurping the 2004 Schedule of

the Ambassadors" and that, after Plaintiff filed for bankruptcy, Defendants announced "the issuance

of the Aces franchise and announced that the Aces would be playing the Ambassadors' schedule for

the 2004 season as a gypsy or away team," Second Amended Complaint ¶¶36-47;  AND Defendants

contending that Plaintiff's allegations as noted above do not state a claim for violation of the

automatic stay because: (i) Plaintiff publicly announced on May 5, 2004 that its baseball club "was

being folded" and that it "would not be fielding a team for the League's 2004 season";[8] and (ii) it

was not the *Ambassador's* schedule but the *League's* 2004 Schedule to which the Complaint refers;[9]

BUT the aforementioned  facts as alleged by Defendants not necessarily being inconsistent

with Plaintiff's allegations,[10] see Lehigh Valley Professional Sports Clubs, Inc., 2001 WL 1188409

at *4 (ruling that "the membership interest owned by the Debtor is intangible property, the attributes

of which allow it to operate a baseball team based in the Lehigh Valley, Pennsylvania.  It is this

property of the estate as to which a violation of the stay occurred.);

AND this Court, applying the liberal notice pleading standard of Fed.R.Civ.P. 8(a) and

---

8.    Defendants request that we take judicial notice of these facts based upon: (i) testimony which their counsel elicited from Peter Karoly, one of Plaintiff's two shareholders, at the hearing which was held on Plaintiff's motion for a preliminary injunction;  and (ii) the press release which was allegedly published on Plaintiff's website.  Brief of Defendants in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) ("Defendants' Memorandum") at 22-23.  For purposes of this Motion only, I take judicial notice of these facts.

9.    Defendants do not support their assertion that "it was not the Ambassador's schedule but the League's 2004 Schedule" with any authority nor do they explain the purpose of the distinction which they are making. Defendants' Memorandum at 23.  For example, even if it is the *League's* Schedule, perhaps the franchisees are legally entitled to a place on the schedule.

10.    Absent knowledge of how the value of a baseball team is determined or affected, we cannot conclude that Defendants did not negatively affect or "effectively eliminate" the value of Plaintiff's franchise by "using the Allentown franchise to field the Aces for the 2004 season" in spite of the fact that Plaintiff had previously publicly revealed its plan not to field a team for the 2004 season.

10

viewing the allegations of the Second Amended Complaint in the light most favorable to the

Plaintiff, concludes that Plaintiff has stated a claim for violation of the stay;[11]

B. Dissolving the League and Reconstituting it Under a New Name

AND Defendants asserting that Plaintiff's allegation that they "effectively eliminated the

value of the Allentown Ambassadors['] franchise" by "voting to dissolve" North American Baseball,

LLC ( the "League") and "reconstituting" it "under a new name, the Canadian American League[,]

with all of the prior Northeast League teams except the Allentown Ambassadors" fails to state a

claim for violation of the automatic stay because:

> (1) Plaintiff, in its capacity as a debtor-in-possession did not possess the rights of a
> member of the League, including the right to vote, in September of 2004 when the
> League's 2004 held its annual meeting;
>
> (2) The management decision made by the remaining members of the League to
> dissolve the League did not constitute an act to obtain possession of or exercise
> control over any property of the Debtor's estate;
>
> (3) The Defendants who formed the Canadian American League were free to do so
> and to include in that new league anyone they wished to and exclude anyone they
> wished;

AND this Court taking judicial notice of the Articles of Organization of North American

Baseball League (the "Articles of Organization") which Defendants have submitted with their

Motion as Exhibit B, see Shurkin v. Golden State Vitners, Inc., 2005 WL 1926620 at *6 (N.D. Cal.

Aug.10, 2005) ("[D]istrict courts routinely take judicial notice of public documents such as

certificates of incorporation or organization filed with the secretary of state."); Amalgamated Bank

---

11.    Defendants correctly assert in their memorandum that Plaintiff has not alleged *how* the League
"effectively eliminated" the value of its franchise by "using the Allentown franchise to field the Aces for the
2004 season." See Defendants' Memorandum at 23 (since Plaintiff was unable to field a team for the 2004
season, how was Plaintiff injured by Defendants' act of retaining the Aces to play Plaintiff's games?).
Defendants can explore this issue through discovery.

v. Yost, 2005 WL 226117 at *5 (E.D. Pa. Jan. 31, 2005) (noting that under Delaware law, "courts

[in ruling on a motion to dismiss] may properly take judicial notice of a certificate of incorporation"

for purposes of "determining whether the directors are exempt from liability for certain conduct");

Grassmueck v. Barnett, 281 F. Supp.2d 1227, 1231-32 (W.D. Wash. 2003) (ruling that the court

could take judicial notice of Certificates or Articles of Incorporation pursuant to Rule 201(b) of the

Federal Rules of Evidence without converting Rule 12(b)(6) motion to dismiss into a motion for

summary judgment); Banks v. Consumer Home Mortgage, Inc., 2003 WL 21251584 at *6 n.7 (E.D.

N.Y. March 8, 2003) (concluding that court could take judicial notice of "a public record on file with

the Secretary of State for Georgia, where [Consumer Home Mortgage, Inc.] lists Michael Ashley

as [its] Chief Financial Officer."]; McMichael v. United States Filter Corporation, 2001 418981 at

*8 (C.D. Cal. Feb. 23, 2001) ("The certificate of incorporation of a Delaware corporation is a

publicly filed document, and as such, can be judicially noticed.");

AND the Articles of Organization showing that the League was organized as a limited

liability company under the law of North Carolina;

AND North Carolina having adopted the North Carolina Limited Liability Act (the "Act"),

see N.C.G.S.A. §57C-1-01;

AND Defendants contending, pursuant to §57C-3-02 of the Act, that Plaintiff ceased being

a member of the League upon filing for bankruptcy and as of September of 2004 had only the rights

of an assignee;

AND §57C-3-02 of the Act stating, in pertinent part:

> *Unless otherwise provided in* this Chapter, the articles of
> organization, or *a written operating agreement*, a person who has
> ceased to be a member shall have only the rights of an assignee as
> provided as provided in G.S. 57C-5-02[.] ... A person ceases to be a
> member of a limited liability company upon the happening of any of

the following events of withdrawal:

* * *

(3) *Unless otherwise provided in* the articles of organization or a written operating agreement or with the consent of all other member's the person's ... (b) filing a voluntary petition in bankruptcy[.]

N.C.G.S.A. §57C-3-02 (emphasis added);

AND §57C-5-02 providing, in pertinent part:

An assignment of a membership interest does not dissolve the limited liability company or entitle the assignee to exercise any rights of a member. An assignment entitles the assignee to receive, to the extent assigned, only the distributions and allocations to which the assignor would be entitled for the assignment.

N.C.G.S.A. §57C-5-02;

AND the terms of an operating agreement, if one exists for the League, possibly affecting

the court's application of N.C.G.S.A. §57C-3-02;

AND Defendants contending that this court should decide whether the statutory termination

of Plaintiff's membership rights in the League pursuant to §57C-3-02 of the Act is effective in light

of §365(e)(1)(B) and §365(e)(2)(A)(i) of the Bankruptcy Code;

AND §365(e)(1)(B) and §365(e)(2)(A)(i) of the Bankruptcy Code stating, in relevant part:

(e)(1)   Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on    .   .   .(B) the commencement of a case under this title[.]

(2)   Paragraph (1) of this subsection does not apply to an executory contract or unexpired lease of the debtor,

13

whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if –

(A)(i) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to the trustee or to an assignee of such contract or lease, whether or not such contract or lease prohibits or restricts assignment of rights or delegation or assignment[.]

11 U.S.C. §365(e);

AND Defendants admitting that the League's operating agreement "is not a matter of record" so they "are not in a position to ask the Court to rule that the League's operating agreement is not an executory contract" but asserting that "at this stage the Court can assume that the League's operating agreement is an executory contract" and determine whether the dissolution provisions of the limited liability company statutes are effective in light of §365(e)(1), <u>see</u> Defendants' Memorandum at 31-33;

AND the court declining to "assume" that the operating agreement is an executory contract and rule on the Motion based on such an assumption;

AND the issues being raised by Defendants, therefore, not being susceptible to a determination at this stage of the proceeding;

AND dismissal of a claim under Rule 12(b)(6) being "warranted only if the non-moving party can prove no set of facts in support of his claim that would entitle him to relief" and such standard not being met with Plaintiff's claim in Count I;

AND therefore, this Court denies Defendants' request to dismiss Count I of Plaintiff's Second Amended Complaint;

## V.  Breach of Fiduciary Duty

14

AND Plaintiff alleging in Count II that Miles Wolff ("Wolff") and Daniel Moushon ("Moushon") breached their fiduciary duty to it by: "(a) failing to allow the Ambassadors to "go dark" for the 2003 or 2004 seasons while allowing other franchises to do the same; [and] (b) failing to assist the Allentown Ambassadors in obtaining a purchaser for their franchise and in fact discouraging the sale of their franchise to potential buyers while assisting other teams in the League to sell their franchises." Second Amended Complaint ¶¶57-59;

AND Wolff and Moushon arguing that Plaintiff has failed to state a claim against them for breach of their fiduciary duty because: (i) they owed no fiduciary duty to Plaintiff; and (ii) there are insufficient allegations that they breached any duty;

AND Wolff being identified in the Complaint as a Defendant as his capacity as the Commissioner, as the owner of the Aces and as the owner of Club du Baseball Professional de Quebec, Inc., d/b/a/ Les Capitales de Quebec, see Second Amended Complaint ¶4(b);

AND Moushon being identified in the Complaint as a Defendant in his capacity as the President of the League, see Complaint ¶4(c);

AND Section 57C-3-20(a) of the Act stating, in relevant part:

> Unless the articles of organization provide otherwise, all members by virtue of their status as members shall be managers of the limited liability company, together with any other persons that may be designated as managers in, or in accordance with, the articles of organization or a written operating agreement.

N.C.G.S.A. §57C-3-20(a);

AND Section 57C-3-20(b) of the Act providing, in relevant part:

> Except to the extent otherwise provided in the articles of organization or a written operating agreement, management of the affairs of the limited liability company shall be vested in the managers. Subject to any provisions in the articles of organization or a written operating agreement or this Chapter restricting, enlarging or modifying the management rights and duties of any manager or mangers, or

15

> management procedures, each manager shall have equal rights and authority to participate in the management of the limited liability company, and management decisions shall require the approval, consent, agreement, or ratification of a majority of the managers.

N.C.G.S.A. §57C-3-22(b);

AND Section 57C-1-03 of the Act defining the term "director" as:

> For any limited liability company the management of whose affairs is vested in whole or in part in persons other than the managers pursuant to G.S. 57C-3-20(b), any person who is so vested with, or is one of a group of persons so vested with, the authority to direct the management of the limited liability company's affairs.

N.C.G.S.A. §57C-1-03;

AND the same section of the Act defining the term "executive" as:

> For any limited liability company the management of whose affairs is vested in whole or in part in persons other than the managers pursuant to G.S. 57C-3-20(b), any person who is so vested with authority to participate in the management of the limited liability company's affairs under the direction of the limited liability company's managers or directors."

N.C.G.S.A. §57C-1-03;

AND N.C.G.S.A. §57C-3-22(b) stating, in relevant part:

> A manager shall discharge his duty in good faith, with the care of an ordinary prudent person in a like position would exercise under similar circumstances, and in the manner the manager reasonably believes to be in the best interests of the limited liability company.

N.C.G.S.A. §57C-3-22(b);

AND N.C.G.S.A. §57C-3-22(f) providing:

> Except to the extent otherwise provided in the articles of incorporation or a written operating agreement, *each director and executive shall be subject to the same requirements* and afforded the same rights *as are provided in this section for a manager when the director or executive exercises authority in the management of a limited liability company's affairs that would otherwise be vested in*

16

*the managers pursuant to G.S. 57C-3-20(b)*;

N.C.G.S.A. §57C-3-22(f) (emphasis added)

AND N.C.G.S.A. §57C-3-22 imposing a "duty of good faith" on the managers and, "except to the extent otherwise provided in the articles of incorporation or a written operating agreement" on each director or executive when he "exercises authority in the management of a limited liability company's affairs that would otherwise be vested in the managers";

AND the Articles of Organization showing that the organizers and/or members of the League are managers thereof;

AND the organizers/and or members of the League being baseball teams, among which is Les Capitales de Quebec;

AND Wolff being listed in the Articles of Organization as the President of Vice President of Les Capitales de Quebec;

AND the Court being unable to conclude that neither Wolff and/or Moushon were assigned any management duties and/or roles by the League in its operating agreement since it is not a part of the record;

AND the allegations of Plaintiff's Second Amended Complaint, when viewed in the light most favorable to Plaintiff as the non-moving party, alleging that Wolff and Moushon breached their duty of good faith by treating Plaintiff in a manner different than other members of the League;

AND Plaintiff having alleged sufficient facts under federal law to put Wolff and Moushon on notice of the claim against them for breach of fiduciary duty;

AND this Court, therefore, denies Defendants' request to dismiss Count II of the Second Amended Complaint;

VI.  Breach of Contract

17

AND Plaintiff having alleged in Count III of its Second Amended Complaint that:

(i) When the majority of the owners agreed to a surcharge of $750,000, an agreement was reached that "the League owners would be paid back out of the proceeds of the sale of the next new franchise for the League," Second Amended Complaint ¶21;

(ii) "At a meeting in 2002, the League owners stipulated that the value of a league franchise from thereon was $750,000," Id. ¶22

(iii) The Catskill franchise was sold to an ownership group in Brockton, Massachusetts, "without the new ownership paying a full franchise fee." Id. ¶34-35

(iv) "By virtue of an agreement by the parties, Plaintiff was to receive a pro-rata share of the sale of the Brockton Rocks['] franchise." Id. at 62;

(v) "To date, no payment as been made by the League or any of the Defendants to Plaintiff on account of" the sale of the Brockton Rocks' franchise  Id. ¶63

(vi) "To date neither the League, its officers nor any of the Defendants have accounted to Plaintiff for monies the League should have received for sale of the Brockton Rocks['] franchise." Id. ¶64

(vii) A new franchise named the Aces was formed and the Aces should have been charged a franchise fee. Id. ¶43-44;

(viii) "By virtue of prior agreements of the parties, Plaintiff should have received a pro-rata share of the sale of a franchise to the Aces." Id. ¶65;

(ix) "To date, neither the League, its officers nor any of the other Defendants have accounted to Plaintiff for the sale to [sic] the Aces['] franchise." Id. ¶67; and

(x) Plaintiff was damaged by the breaches in that it failed to receive funds to which it was entitled. Id. ¶68-70;

AND a plaintiff pleading a breach of contract claim being required to plead facts establishing: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damage, see Heller v. Deutche Bank AG, 2005 WL

18

525401 at *8 (E.D. Pa. March 3, 2005), <u>Ginley v. E.B. Mahoney Builders, Inc.</u> (<u>In re Ginley</u>), 2004 WL 2137820 at *1 n.2 (E.D. Pa. Sept. 23, 2004);

AND Plaintiff having referred to an agreement (the "Payback Agreement") in paragraph 21 of the Second Amended Complaint;

AND Plaintiff having alleged that under the Payback Agreement, the "League owners"[12] were to have been paid back for the $750,000 which they were collectively surcharged from the next new franchise of the League;

AND Plaintiff having alleged that the Payback Agreement was breached because, even though a new franchise was sold to the Brockton Rocks, neither the League nor any of the other Defendants ever accounted to Plaintiff for any of the proceeds which the League should have received from the sale of the franchise;

AND Plaintiff having alleged that it has been damaged by not receiving its pro rata share from the proceeds of the franchise fee paid by the Brockton Rocks;

BUT Plaintiff having failed to specifically identify the party or parties to the Payback Agreement and to specifically allege whose obligation it was to pay the "League owners" back (for the $750,000 which they were surcharged) from the proceeds of the next sale of a franchise;

AND Plaintiff being required under the federal rules of pleading to include sufficiently specific allegations in its complaint to enable Defendants to file a responsive pleading;

AND this Court noting that only a party to a contract can be charged with its breach, <u>Surya Systems, Inc. v. Sunka</u>, 2005 WL 1514225 at *2 (E.D. Pa. June 24, 2005), ;

---

12.   Plaintiff used the term "League owners" in its pleading but failed to define the term.  If Plaintiff uses this term or any other term to refer collectively to a set of defendants in its amended pleading, Plaintiff is directed to define the term.

AND Plaintiff having further referred in paragraph 65 of the Second Amended Complaint to "prior agreements," which entitled Plaintiff to a pro rata share of any franchise fee paid by the Aces;

AND Plaintiff having failed to identify the existence of these "prior agreements," including their essential terms such as the identity of the parties thereto, when the agreements were made and the terms of the agreement which imposed the obligation which Plaintiff contends was breached;

AND Plaintiff, therefore, having failed to satisfy the minimum pleading requirements of Fed. R. Civ. P. 8(a) for its breach of contract claim;

AND Plaintiff having been granted the opportunity to amend its Second Amended Complaint but not having been informed by the Court of the specific nature of the deficiencies of its breach of contract claim, Plaintiff shall be permitted to amend Count II of its Second Amended Complaint to adequately allege its breach of contract claim, see Wallace v. Systems & Computer Technology Corporation, 1996 Wl 195382 at *9 (E.D. Pa. April 19, 1996) (allowing plaintiff to file a  second amended complaint since he did not have the "benefit of the court's guidance as to the specific nature of the deficiencies" in his pleading when he filed his first amendment as of by right);[13]

VII.    Failure to Plead Sufficient Facts to State a
        Claim Against the Individual Defendants

AND Defendants asserting that Plaintiff has failed to plead sufficient facts against Wolff, Moushon, Chip Hutchins, Van Schley, Jonathon Fleisig, Floyd Hall, Greg Lockard, Nicholas Lopardo (collectively referred to as the "Individual Defendants") in Counts I and III;

AND there being no allegations in Counts I or III that the Individual Defendants acted in

---

13.   When a plaintiff has been apprised of the nature of the deficiencies of its claim and fails to resolve them, the court has discretion to deny the plaintiff leave to amend.  Krantz v.  Prudential Investments Fund Management LLC, 305 F.3d 140, 144 (3rd Cir. 2002).

their personal capacities rather than as representatives of the members of the League;

AND there being no allegations in Counts I or III that would support naming the Individual Defendants as defendants in Count III because of their capacity as representatives of the member of the League;

AND this Court, therefore, dismisses the Individual Defendants as parties from Counts I and III of the Complaint, see Child v. Beame, 417 F. Supp. 1023, 1025 (S.D. N.Y. 1976) ("When a defendant is merely named in the caption of a complaint but is nowhere claimed to have caused the plaintiff injury, the complaint against him must be dismissed.");

AND it is hereby ORDERED and DECREED that:

    (1)    Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED in part and DENIED in part; and

    (2)    The claims which Plaintiff included in its Amended Complaint but deleted from its Second Amended Complaint, namely the claims for injunctive relief, an accounting, Sherman Act violations, RICO violations and collusion and conversion are hereby DISMISSED WITH PREJUDICE; and

    (3)    Counts I and III are hereby DISMISSED against the Individual Defendants; and

    (4)    Count II of the Second Amended Complaint shall be DISMISSED UNLESS Plaintiff files, within twenty (20) days from the date of this Order, a Third Amended Complaint which states a claim for breach of contract.

Reading, PA

_____
THOMAS M. TWARDOWSKI
United States Bankruptcy Judge